**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANGELA M. LATANTE,**

**Plaintiff,**

**v.**                                                    **7:06-CV-722**
                                                            **(FJS)**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

**Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**CONBOY, McKAY, BACHMAN**          **PETER L. WALTON, ESQ.**
**& KENDALL, LLP**
407 Sherman Street
Watertown, New York 13601
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **KAREN G. FISZER, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL - REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

# I. INTRODUCTION

Plaintiff Angela M. LaTante brought this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  *See* Dkt. No. 1.

Currently before this Court are Plaintiff's and Defendant's cross-motions for judgment on the pleadings or, in the alternative, for summary judgment.

# II. BACKGROUND

Plaintiff, then twenty-six, filed an application for DIB and SSI on June 20, 2003, claiming that she had been unable to work since March 13, 2003.  *See* Administrative Record ("AR") at 61, 341.  In her disability report, Plaintiff cited opiate addiction, bipolar disorder, and social anxiety disorder as her disabling conditions.  *See id.* at 73.  The Social Security Administration denied Plaintiff's claim on November 4, 2003.  *See id.* at 45.  Plaintiff filed a timely request for a hearing on December 23, 2003.  *See id.* at 49.  The hearing was held on November 3, 2004, in Watertown, New York before Administrative Law Judge ("ALJ") R. Neely Owen.  *See id.* at 349.  Attorney Peter L. Walton represented Plaintiff, who appeared and testified.  *See id.* at 349, 351.  John Newman, a vocational expert ("VE"), also testified.  *See id.* at 378.

ALJ Owen considered the case *de novo* and issued a written decision denying Plaintiff's application on December 23, 2004.  *See* AR at 32-42.  In his decision, ALJ Owen stated that he had carefully considered all medical opinions regarding the severity of Plaintiff's impairments and made the following findings:

1) Plaintiff met the nondisability requirements for a period of disability and DIB set forth in § 216(i) of the Act and is insured for benefits through the date of the decision.

2) Plaintiff has not engaged in substantial gainful activity since her alleged onset date.

3) Plaintiff's bipolar disorder and personality disorder are severe impairments.

4) Plaintiff's impairments do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5) Plaintiff's allegations regarding her limitations are not totally credible.

6) Plaintiff's RFC is as follows: unlimited physical residual capacity, an inability to perform more than simple, unskilled work due to seriously limited, but not precluded, ability to make mental work-related adjustments.

7) Plaintiff can perform her past relevant work as a cashier and stocker.

8) Plaintiff is a younger individual.

9) Plaintiff has a high-school education.

10) Plaintiff has no skills transferrable to work within her residual functional capacity ("RFC").

11) Given Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.

12) Plaintiff was not under a disability, as defined by the Act, at any time through the date of the ALJ's decision.

*See* AR at 41-42.

The ALJ's decision became the Commissioner's final decision on April 12, 2006, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 4.

Plaintiff commenced this action on June 12, 2006, *see* Dkt. No. 1, and filed a supporting brief on December 20, 2006, *see* Dkt. No. 10. Defendant filed a response brief on April 24, 2007. *See* Dkt. No. 18.

## III. DISCUSSION

-3-

**A.     Standard of Review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

To be eligible for DIB, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, she is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age,

education, and experience.  *See* 20 C.F.R. § 416.920(f), (g).  If so, then she is not disabled.  *See* 20 C.F.R. § 416.920(g).  A claimant is only entitled to receive disability benefits if she cannot perform any alternative gainful activity.  *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far.  *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

**B.      The ALJ's assessment of medical opinions**

When assessing the opinions of a claimant's physicians, an ALJ must give controlling weight to the opinion of a treating physician where it is "'supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.'"  *Audi v. Astrue*, No. 07-CV-1220, 2009 WL 3199481, *13 (N.D.N.Y. Sept. 30, 2009) (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)); *see also* 20 C.F.R. § 404.1527(d)(2).  However, "'the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts[.]'"  *Arruda v. Comm'r of Soc. Sec.*, 363 Fed. Appx. 93, 95 (2d Cir. 2010) (quotation and other citation omitted).

If an ALJ does not give controlling weight to a treating physician's opinion, he must "'give good reasons'" for not doing so.  *See Audi*, 2009 WL 3199481, at *13 (quotation omitted).  In such cases, the ALJ should consider "'(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.'"  *Id*. (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009) (quoting *Clark v.*

*Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998))); *see also* 20 C.F.R. § 404.1527(d)(2).[1]

Here, the ALJ did not err when he chose not to give controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Sadaqat Khan.  The ALJ found that Dr. Khan's opinion of June 8, 2004, that Plaintiff experienced moderate and marked limitations due to her mental disorders was "not substantiated by the remainder of the record."[2]  *See* AR at 38.  Regarding the 20 C.F.R. § 404.1527(d)(2) considerations, the ALJ was undoubtedly aware from treatment notes that Dr. Khan was a specialist who had treated Plaintiff for well over a year; but the ALJ nevertheless assigned little weight to Dr. Khan's opinion because of the inconsistencies between it and other evidence in the record, as well as the lack of evidence supporting it.  *See id*.  Since the ALJ set forth specific and adequate reasons for the weight that he gave Dr. Khan's opinion in accordance with 20 C.F.R. § 404.1527(d)(2), he followed the appropriate legal standard.  Consequently, the Court finds that the ALJ did not err when he gave little weight to Dr. Khan's opinion.[3]

---

[1] In addition, where an ALJ finds against the claimant, he must set forth the specific reasons for the weight he assigned to a treating source's opinion.  *See* Social Security Ruling ("SSR") 96-2p, *5; *see also Lunan v. Apfel*, No. 98-CV-1942, 2000 WL 287988, *5 (N.D.N.Y. Mar. 10, 2000) (holding that remand was necessary because the ALJ did not discuss the weight he assigned or the reasons for assigning such weight to treating source opinions as 20 C.F.R. § 404.1527(d) requires).

[2] Specifically, the ALJ asserted that Dr. Khan's records did not indicate any clinical findings to support his June 8, 2004 conclusions, which the ALJ surmised were largely based on Plaintiff's self-reported symptoms and limitations.  *See* AR at 38.  The ALJ also cited Dr. Khan's most recent treatment note, in which he opined that "with limitations [Plaintiff] should be able to work."  *See id*. (quoting AR at 314).

[3] The ALJ did not explicitly assign weight to other opinions, but he cited Dr. Cary Chugh's opinion as a counterweight to Dr. Khan's findings.  *See* AR at 35.  Dr. Chugh, a consulting psychologist, determined that, although Plaintiff suffered from bipolar disorder and social phobia, she could not explain why she would not return to work, and she was not anxious

(continued...)

**C.      Material effect of drug abuse on Plaintiff's condition**

The Social Security Administration has held that "[d]rug addicts or alcoholics cannot be

considered 'disabled' on the basis of that diagnosis alone[.]"  *See* SSR 82-60, *2.  However, a

diagnosis of drug addiction or alcoholism should not have an adverse effect on a disability

evaluation.  *See id.*  To that end, the 1996 Amendments to the Social Security Act state that "an

individual 'shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a

contributing factor material to the Commissioner's determination that the individual is disabled.'"

*Mims v. Apfel*, 182 F.3d 900, 1999 WL 376840, *1 (2d Cir. 1999) (quoting 42 U.S.C.

§ 1382c(a)(3)(J) (Supp. II 1996)).

To determine whether drug addiction is material to the determination of disability, the "key

factor" is "whether [the Commissioner] would still find [the claimant] disabled if [she] stopped

using drugs[.]"  20 C.F.R. §§ 404.1535(b)(1); 416.935(b)(1).  The regulations state that, where there

is evidence of alcoholism or drug use, the Commissioner must determine which physical and mental

limitations would remain in the absence of substance abuse and whether these limitations would be

disabling on their own.  *See Frederick v. Barnhart*, 317 F. Supp. 2d 286, 290 (W.D.N.Y. 2004)

(citing [20 C.F.R.] §§ 404.1535(b)(2); 416.935(b)(2)).  If the remaining limitations would be

disabling to the claimant, then she would be entitled to SSI and DIB benefits.  *See id.* (citing [20

C.F.R.] §§ 404.1535(b)(2)(ii); 416.935(b)(2)(ii)).  If the remaining limitations would not be

disabling, however, then substance abuse would be considered material; and the claimant would not

be eligible for benefits.  *See id.* (citing [20 C.F.R.] §§ 404.1535(b)(2)(i); 416.935(b)(2)(i)).

---

[3](...continued)
in appearance.  *See id.*

-7-

Here, the ALJ found that Plaintiff's bipolar disorder and social anxiety disorder were both connected to her drug use. *See* AR at 37. Although he did not explicitly state that Plaintiff's bipolar disorder and social anxiety disorder would remain if Plaintiff's drug use ended, the ALJ clearly implied that this was the case; and he indicated that Plaintiff's drug abuse was material to her condition. *See id*. Moreover, the ALJ's position finds support in the record because none of Plaintiff's doctors opined that a cessation of drug abuse would have had a positive effect on her mental maladies. *See id*. Since "[t]he Secretary is entitled to rely not only on what the record says, but also on what it does not say[,]" this constitutes substantial evidence to support the ALJ's determination of materiality. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted).

The Court, therefore, finds that the ALJ did not err when he found that Plaintiff's drug use was material to her mental conditions.

**D.     The ALJ's Step Three analysis**

To assess a mental impairment, an ALJ first rates the severity of functional loss in four areas: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration in work or work-like settings." *Williams v. Callahan*, 30 F. Supp. 2d 588, 594 (E.D.N.Y. 1998) (citing 20 C.F.R. § 416.920a). A five-point scale of none, mild, moderate, marked, and extreme measures the first three areas. *See* 20 C.F.R. § 416.920a(c)(4). The ALJ rates the fourth area on a scale of none, one or two, three, and four or more. *See id*. A rating at the highest point on either scale indicates a degree of limitation that is incompatible with the ability to perform gainful activity. *See id*.

Paragraph B of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 incorporates this scaled assessment of a claimant's functional loss into its requirements for what constitutes a disability. Bipolar disorder must result in two of the following: a score of "marked restriction" of activities in daily living, "marked difficulty" in social functioning, "marked difficulty" in concentration, and repeated episodes of decompensation.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B)(1-4).

If the bipolar disorder does not meet the requirements of Paragraph B, it must meet the requirements of Paragraph C.  Those requirements are the existence of medical documentation that the claimant had a chronic affective disorder for at least two years; that, because of the disorder, the claimant suffered more than a minimal limitation of ability to perform basic work activities; that the claimant currently attenuates the symptoms with medication or psychological support; and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).

Section 12.08 of 20 C.F.R. Pt. 404, Subpt. P, App. 1 sets forth the requirements that the claimant must meet to show that her anxiety disorder is disabling.  The claimant must demonstrate

> A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
> 1. Seclusiveness or autistic thinking; or
> 2. Pathologically inappropriate suspiciousness or hostility; or
> 3. Oddities of thought, perception, speech, and behavior; or
> 4. Persistent disturbances of mood or affect; or

5. Pathological dependence, passivity, or aggressivity; or
6. Intense and unstable interpersonal relationships and
impulsive and damaging behavior;
And
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration,
persistence, or pace; or
4. Repeated episodes of decompensation, each of extended
duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.08(A), 12.08(B).

Here, the ALJ properly applied § 12.04.  First, he assigned Plaintiff scores of moderate
difficulty in daily living, social functioning, and concentration; and he found that she had
experienced only one or two episodes of prolonged decompensation.  *See* AR at 38.  Since Plaintiff,
therefore, did not meet the criteria for § 12.04(B), the ALJ considered § 12.04(C) and determined
that Plaintiff had not had repeated episodes of decompensation, that she could handle an increase in
mental demands or a change in environment, and that she did not have a history of one or more
years' inability to function outside of a highly supportive living environment.  *See id*. at 38-39.  The
ALJ concluded that Plaintiff's bipolar disorder did not constitute a disability under § 12.04.  *See id*.
at 39.

Next, the ALJ properly considered Plaintiff's social anxiety in light of the criteria of § 12.08.
*See* AR at 38-39.  Although the ALJ did not discuss the criteria of § 12.08(A), he did not need to do
so.  In order for Plaintiff's anxiety disorder to qualify as disabling, Plaintiff must meet the criteria
for both § 12.08(A) and (B), and she did not meet the requirements of § 12.08(B), which are the
same as § 12.04(B).

Accordingly, the Court finds that the ALJ applied the correct legal analysis when he made

his step three determination.

**E.     Plaintiff's capacity to return to her past work**

At step four of the five-step analysis, the burden is on the claimant to prove that her limitations render her unable to perform her past relevant work. *See Monette v. Astrue*, 269 Fed. Appx. 109, 111 (2d Cir. 2008).   This is because the ability to perform past work "may be indicative of the capacity to engage in SGA when that work experience constituted SGA and has current relevance considering duration and recency." SSR 82-62, *2.[4]  To determine if a plaintiff is capable of performing past work, the ALJ must compare the plaintiff's current RFC to the demands of her past work. *See id*. at *3; *see also*, 20 C.F.R. § 416.920(f); *State of New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).  To establish disability at step four, a plaintiff must show that her RFC is incompatible with the performance of her past relevant work either as she had actually performed it or as others generally perform it. *See Shatraw v. Astrue*, No. 7:04-CV-0510, 2008 WL 4517811, *17 (N.D.N.Y. Sept. 30, 2008) (citation omitted).

Here, the ALJ established Plaintiff's RFC and then compared that RFC to the demands of Plaintiff's previous work. *See* AR at 39.  The ALJ determined that Plaintiff had an unlimited physical residual functional capacity with the inability to perform more than simple, unskilled work due to a limited ability to make mental work-related adjustments. *See id*. at 42.  In light of this RFC, the ALJ found that Plaintiff was still capable of performing the tasks of a stock clerk and cashier, her past work. *See id*.  This is the proper analysis under the regulations; and the ALJ,

---

[4] The Social Security Administration indicates that a claimant's past work is normally relevant when it was performed within the last fifteen years. *See* SSR 82-62, at *2.

therefore, did not err when he found that Plaintiff was not disabled at step four.  Accordingly, the Court finds that the ALJ did not err when he found that Plaintiff could return to her past work.


**F.**     **The VE's opinion regarding Plaintiff's ability to work**

At step five of the analysis, an ALJ may seek the opinion of a VE regarding which jobs the claimant could perform, often phrased in terms of the capabilities of a hypothetical person in a similar medical situation to the claimant.  *See* 20 C.F.R. § 404.1566(e).  Where the ALJ seeks the VE's opinion regarding a hypothetical claimant with limitations that correspond to the actual claimant's RFC, "[t]he Commissioner may rely on [the] vocational expert's testimony concerning the availability of jobs suited to [the] hypothetical person's capabilities so long as the hypothetical is based on substantial evidence."  *Mancuso v. Astrue,* 361 Fed. Appx. 176, 179 (2d Cir. 2010) (citation omitted).  However, a VE's testimony will not constitute substantial evidence to support an ALJ's decision where the ALJ relies on a VE's testimony regarding a hypothetical claimant whose limitations do not mirror the actual claimant's.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114-15 (2d Cir. 1981); *see also Gilliam v. Califano*, 620 F.2d 691, 693-94 (8th Cir. 1980) (holding that a VE's testimony was "fatally deficient" where the hypothetical question did not identify all of the claimant's limitations (citations omitted)).

The hypothetical on which the ALJ relied did not ignore any of Plaintiff's limitations; rather, it identified them but did not treat them as severe.  *See* AR at 382-83.  The hypothetical mirrored Plaintiff's RFC, and the ALJ relied on it to determine Plaintiff's ability to work.[5]  As a result, it was

_____

[5] The RFC on which the VE opined involved a hypothetical claimant of the same age, educational background, and vocational history of Plaintiff.  *See* AR at 382.  The hypothetical

(continued...)

-12-

not error for the ALJ to rely on the VE's testimony regarding the availability of jobs that Plaintiff could perform.

The ALJ considered, but did not rely on, two other hypotheticals on which the VE opined. At the hearing, Plaintiff's counsel asked the VE what employment prospects would be for a hypothetical claimant who experienced the restrictions that Dr. Khan had described in his assessment of Plaintiff. *See* AR at 384. The VE stated that such a person would have no potential occupational base. *See id.* Plaintiff's counsel then asked the VE about a hypothetical claimant with the medical problems described in Plaintiff's own subjective statements of limitation. *See id* at 384-85. The VE agreed that this hypothetical claimant would also be unable to perform any work. *See id.* at 385.

The ALJ did not err when he chose not to rely on the VE's answers to the two alternative hypotheticals because both of those hypotheticals included limitations that Plaintiff did not have. *See Aubeuf*, 649 F.2d at 114-15. Instead, the ALJ properly relied on the VE's opinion regarding the hypothetical that the ALJ proposed that correlated with Plaintiff's RFC. As a result, the Court finds that the ALJ did not err when he determined that Plaintiff retained the ability to engage in substantial gainful employment.

**G.      Plaintiff's credibility**

When assessing a claimant's credibility, the ALJ must consider both her medical records and her reported symptoms. *See* 20 C.F.R. § 404.1529. A claimant's statements about her condition, on

---

[5](...continued)
claimant also had the same mental condition as Plaintiff, as reflected in the DDS physician's October 14, 2003 RFC assessment. *See id.*

their own, are not enough to establish disability.  *See id.*; SSR 96-7p, *1.  A claimant's complaints

of pain and limitation are, however, "'entitled to great weight where . . . [they are] supported by

objective medical evidence.'"  *Futia v. Astrue*, No. 1:06-CV-0961, 2009 WL 425657, *6 (N.D.N.Y.

Feb. 19, 2009) (quoting *Simmons v. U.S.R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)).

 If a claimant's testimony is not supported by medical evidence, the ALJ employs a two-step

process to evaluate that claimant's reported symptoms.  *See* SSR 96-7p, *2.  First, the ALJ

determines if the claimant has medically determinable impairments that could produce the alleged

symptoms.  *See* 20 C.F.R. § 404.1529(a); SSR 96-7p, at *2.  Second, if impairments do exist, the

ALJ evaluates the intensity, persistence, and limiting effects of the symptoms to determine the

extent to which the symptoms limit the claimant's ability to work.  *See* 20 C.F.R. § 404.1529(a);

SSR 96-7p, at *2.  In so doing, the ALJ considers (i) claimant's daily activities; (ii) the location,

duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and

aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication the claimant

takes or has taken to relieve her pain or other symptoms; (v) other treatment the claimant receives

or has received to relieve her pain or other symptoms; (vi) any measures the claimant takes or has

taken to relieve her pain or other symptoms; and (vii) any other factors concerning the claimant's

functional limitations and restrictions due to her pain or other symptoms.  *See* 20 C.F.R.

§ 416.929(c)(3)(i)-(vii); *see also* SSR 96-7p, at *3.

 In addition, where an ALJ assesses a claimant's subjective statements of pain in light of

medical evidence that indicates that the claimant can work and finds that the claimant's statements

cannot overcome the medical evidence to the contrary, "there is no need for further articulation by

the ALJ regarding the [claimant's] credibility."  *Francis v. Astrue*, No. 3:09-CV-1826, 2010 WL

-14-

3432839, *4 (D. Conn. Aug. 30, 2010).

Here, the ALJ correctly applied the two-step process.  The ALJ determined that Plaintiff had the medically determinable impairments of bipolar disorder and personality disorder.  *See* AR at 41. The ALJ also determined that these impairments might cause some of the limitations about which Plaintiff complained.  *See id*. at 36.  However, the ALJ concluded that Plaintiff's impairments did not limit her ability to work to the extent that she alleged.  *See id*. at 36-37.  The ALJ reasoned that, due to the lack of objective medical evidence to support Plaintiff's allegations of pain, those allegations were not entirely credible.  *See id*. at 37.  Pursuant to the Commissioner's framework, the ALJ considered Plaintiff's daily activities, noting her difficulty leaving the home and inability to shop for groceries without her sister's presence.  *See id*. at 34.  He acknowledged the alleged frequency of Plaintiff's panic attacks, her reported symptoms regarding diminished concentration, and her prior difficulty interacting with supervisors and clients.  *See id*.  Moreover, the ALJ acknowledged the prescribed medications that Plaintiff took as part of her treatment regimen.  *See id*. at 34.  The ALJ, nevertheless, found that Plaintiff's statements of limitation were inconsistent with her treatment regimen and the medical evidence in the record.  *See id*. at 37.  He also noted Dr. Khan's opinion that Plaintiff was not credible regarding the effects of her drug abuse.  *See id*.

Since the ALJ followed the Commissioner's framework of analysis, he did not err when he found that Plaintiff's subjective statements of pain were not entirely credible.  Accordingly, the Court finds that the ALJ properly assessed Plaintiff's credibility.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the

-15-

applicable law, and for the above-stated reasons, the Court hereby

ORDERS that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

ORDERS that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

ORDERS that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

ORDERS that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: December 17, 2010

      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

-16-